SABRE v. UNITED TRACTION & ELECTRIC CO. et al.

(District Court, D. Rhode Island.  June 1, 1915.)

1. CORPORATIONS ⬤170—RIGHTS OF STOCKHOLDERS—HOLDING COMPANY.

A stockholder in a holding company, chartered for the purpose of buying, holding, and selling stock and securities of other corporations, is not a stockholder, nor entitled to the rights of a stockholder, in another corporation, stock of which is owned by the holding company, and the leasing or sale of all of the property of a corporation controlled by the holding company through stock ownership, by the unanimous vote of the stockholders of the lessor or vendor, does not require for its validity the unanimous consent of the stockholders of the holding company.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 624–632; Dec. Dig. ⬤170.]

2. CORPORATIONS ⬤377—HOLDING COMPANIES—SEPARATE ENTITY OF CONTROLLED CORPORATION.

When one corporation owns all of the stock of another, a court of equity may, in some instances and for some purposes, ignore the existence of the latter and treat the dominant company as if it alone were the owner and operator of the business of the controlled corporation; but the court cannot disregard forms prescribed by statute for securing corporate rights, nor give corporate rights to, nor enlarge the corporate powers of, the controlling corporation, and where it is without authority under its charter to conduct the business of the controlled corporation, the distinction between the two corporations is a matter of substance, and not merely of form, and their independent existence must be recognized.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1531–1534; Dec. Dig. ⬤377.]

3. CORPORATIONS ⬤180—POWERS—ACTS REQUIRING UNANIMOUS CONSENT OF STOCKHOLDERS.

The unanimous consent of all the stockholders of a corporation is not essential to the doing in good faith of any act within its charter powers.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 665–673; Dec. Dig. ⬤180.]

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. CORPORATIONS ☞189—RIGHTS OF STOCKHOLDERS—ESTOPPEL.

A stockholder, who after what he claimed was an illegal transaction on the part of the corporation, retained his stock for four years and received increased dividends thereon, is estopped to claim that because of such transaction he is entitled to require the corporation to purchase and pay for such stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 706–722; Dec. Dig. ☞189.]

In Equity. Suit by George W. Sabre against the United Traction & Electric Company and the Rhode Island Securities Company. Decree for defendant Traction Company, and for complainant against the defendant Securities Company.

See, also, 156 Fed. 79.

Lewis A. Waterman and Gardner, Pirce & Thornley, all of Providence, R. I., for complainant.

Edwards & Angell, of Providence, R. I., for respondents.

BROWN, District Judge. This is a bill in equity by a minority shareholder, holding 400 shares of the defendant Traction Company, against that company and the Rhode Island Securities Company. Both defendants are New Jersey corporations. The opinion of this court upon demurrer to the bill, reported in Sabre v. United Traction & Electric Company, 156 Fed. 79, sets forth in some detail the allegations of the bill, and may be referred to in connection with this opinion.

The complainant objects to certain leases for terms of 999 years made by several street railway corporations to the Rhode Island Company, a Rhode Island corporation, whose shares were owned by the Rhode Island Securities Company. The leases were made through the exercise by the Traction Company of its voting power as a holder of substantially all the shares in each of the lessor corporations. His objection is, in substance, that the leases and agreements pursuant to which the leases were made effected a diversion of the net earnings of the street railway companies from the shareholders of the Traction Company to the shareholders and bondholders of the Securities Company.

Though complainant's brief asserts that the transaction looks like a clever scheme to divert from a minority of the shareholders of the Traction Company a large part of the future net earnings of the railway companies, there is no charge of fraud.

The bill alleges that before the making of these leases the United Traction Company, by virtue of its share holdings, received the earnings of these corporations; that the moneys so received were applicable to the payment of dividends to shareholders of the United Traction Company; that as a shareholder the complainant was justly entitled to his proportionate share of the entire net earnings of the various street railway companies whose stock was owned by the Traction Company; and that since the making of the leases his returns on his investment in the stock of the Traction Company are practically limited for all time to an annual dividend of 5 per cent. on his stock

at par, and to a proportionate share of the dividends upon a small fraction of the stock of the Rhode Island Securities Company.

It is the contention of the complainant that by the leases he and other shareholders of the Traction Company were wrongfully deprived of much the greater part of the surplus earnings of the street railway corporations over and above the amount of the dividends paid upon the stock of the Traction Company.

The complainant urges that the case should be treated as if the Traction Company were the direct owner of the street railway properties that were leased; that the Traction Company was not a mere holding company, but was organized for the purposes of consolidating the electric street railway properties in Providence and vicinity, and of actually controlling and managing them as one system, and that it did thus actually control and manage them as its sole business; that under such conditions a court of equity, disregarding the form and looking at the substance, should ignore the existence of subsidiary corporations that are mere puppets of the corporation that controls them.

Next the complainant contends that:

"Corporations have no right to transfer their property and franchises by long-term leases and thus practically go out of business without the unanimous consent of their stockholders, unless this is expressly provided for by statute at the time of the creation of the corporation; or, if the statute is enacted subsequent to the formation of the corporation, unless proper provision is made for ascertaining and paying to each dissenting stockholder the fair value of his stock."

This is the main proposition of law which complainant seeks to apply to the facts of this case.

The argument proceeds with the contention that the leases, therefore, could properly be made only by the unanimous consent of all the shareholders of the Traction Company, and that as there was no such unanimous consent, nor even a consent by a majority vote of the shareholders, and although all the other shareholders in the Traction Company finally assented, the complainant, as a nonassenting shareholder, still has the right to object to a transaction which requires, but did not have, unanimous consent of all shareholders.

[1] It is impossible, however, to accept the contention that the nonassent of a shareholder of the Traction Company should be given the same effect as the nonassent of a shareholder in each of the lessor street railway companies. Neither as a matter of form nor as a matter of substance can the complainant be regarded as a shareholder, or entitled to claim the rights of a shareholder in any one of the lessor companies. He is merely a shareholder in a corporate owner of all the stock of the street railway corporations, each of which is still a distinct corporation whose individual existence cannot be ignored.

The United Traction Company was organized under the laws of the state of New Jersey. Under its articles of incorporation it had no power to engage in the business of operating street railway companies in the state of New Jersey, in the state of Rhode Island, or elsewhere. It derived no such authority from the Legislature of the state of Rhode Island, and its only rights arose from its acquisition of the stock

of the street railway corporations. It had such rights as resulted from its ownership of the stock.

The complainant contends that, though the Traction Company may have been nominally and in form a holding company, investing and dealing in stocks and bonds, it was really and as matter of fact the owner and operator of the consolidated street railway properties of Providence and vicinity, and that the transaction was really a transfer of all its property to the Securities Company, etc. We are asked to ignore the existence of the railway corporations and treat the case as if the leases were made directly by the Traction Company without the complainant's assent. All this is for the purpose of obviating the defendants' contention that the leases were made by unanimous consent of all the shareholders of the railway corporations.

[2] It is true that, when one corporation owns all the stock of another corporation, the court may, in some instances and for some purposes, ignore the existence of the latter and treat the dominant company as if it alone were the owner and operator of the business of the controlled corporation. To apply that principle here, however, would be to raise very serious doubts as to complainant's rights. Only upon the theory of the separate existence of the operating companies, and by ownership of their shares, has the Traction Company acquired any rights in respect to these operating companies. How far its ownership of shares in distinct corporations would justify it in managing the entire properties as if all were directly owned by the Traction Company and merged in a single ownership and control; whether the shares in any one of the street railway corporations could be voted by the Traction Company as its sole shareholder, otherwise than in the separate interest of such corporation; whether consistently with the rights of the public the Traction Company, under its voting power as a shareholder, could manage one corporation or apply its income in the interest of, or for the benefit of, another of the street railway corporations; whether, without authority from the Rhode Island Legislature, there could be a legal consolidation of these separate companies into a single operating company—are questions that might immediately arise, were we to ignore the existence of the separate corporations and treat the Traction Company as if it were in fact an owner dealing directly with its own property.

While a court of equity may look through form to substance, it cannot disregard forms prescribed by statute for securing corporate rights, nor give corporate rights to the Traction Company, or enlarge its corporate powers.

Upon this bill to enforce the rights of a shareholder in this company we may assume for the purposes of the case the legality of the organization of the United Traction Company, and of its acquisition of the stock of the street railway companies, and also its right to exercise the voting powers incident to its stock ownership.

[3] By purchasing shares in the Traction Company, whose powers included the holding of shares of stock, the complainant assented that the rights incidental to such stock ownership should be exercised by the Traction Company, either through its board of directors or through the

regular action of a majority of the shareholders. Unanimous consent of the shareholders of the Traction Company was clearly unnecessary to enable that corporation to do any act within its corporate purposes. The holding of shares of other corporations was defined in its articles of organization as one of such purposes. If it owned all of the shares in any corporation, it could, therefore, as such sole shareholder, assent to any disposition of the assets which would be valid with the assent of all the shareholders.

Even if there were any irregularity in the action of the Traction Company whereby it attempted to authorize the stock to be voted in favor of the leases (and it is not clear that there was such irregularity), the action of the board of directors and the subsequent confirmation of the leases by all but 400 out of 80,000 shares of the Traction Company, is sufficient ground for now holding that the leases were validated by persons who had the right to authorize them, even against the dissent of a minority of the shareholders of the Traction Company.

The complainant does not question the right of the Traction Company under ordinary circumstances to vote the entire stock owned by it in each corporation, but does question its right to vote for the making of these leases.

The action of the Traction Company in respect to these leases was not taken as the owner of the properties of the street railway corporations. The Traction Company did not assume ownership, but merely exercised its rights as a shareholder, while recognizing the corporate independence of the different street railway corporations and their separate ownership of the properties leased by them respectively. In fact, in view of the outstanding obligations secured by these various properties, it is doubtful if any other course could have been taken.

The attempt to identify the Traction Company with the operating companies, and thus to transform a dissenting shareholder of the Traction Company into a dissenting shareholder in all the operating companies, must be rejected as unsound.

We may next consider whether the action of the Traction Company, in its capacity as a holding company, was such as to require unanimous consent of its stockholders.

It is urged that the Traction Company practically voted itself out of business and tied up its assets so that it could no longer do business, and that this it could not do without unanimous consent of all its shareholders. But is it true that the Traction Company practically voted itself out of business? Its business was not the operation of street railways, but included the right to hold securities, whether bonds, mortgages, debentures, notes, or shares of capital stock. These are powers of the nature of those exercised by investment companies.

It must be held, therefore, that after the execution of the leases the Traction Company still continued to carry on a business for which it was organized. R. I. Hospital Trust Co. v. Rhodes, 37 R. I. 141, 159 et seq., 161, 165, 91 Atl. 50.

I find, as contended by the defendant, that the complainant, as a minority stockholder of the Traction Company, was possessed of no rights which were violated by the fact that the Traction Company

voted its shares of stock in the operating companies in favor of leasing the property and franchises of the operating companies to the Rhode Island Company without his consent.

The allegations of the bill that complainant purchased his shares in the expectation that, with the increase of population and of the business of the Rhode Island corporations, the dividends of the United Traction Company would greatly increase, and in view of the prospective, rather than of the present, value of such investment, and the complaint that prospective values have been diverted, and complainant's expectations have thus been disappointed, do not aid his case, since all this does not affect the right of the Traction Company to make changes of investment, or even to dispose of its share holdings upon terms acceptable to the directors or a majority of the shareholders.

That the value of the complainant's shares was depreciated is not proved. On the contrary, the evidence shows that the market value of the shares was increased, and there is no evidence to support a finding that the intrinsic value of the assets of the Traction Company was in fact diminished. Nor does the complainant maintain his contention that the shareholders did not get in the increase of dividends from 4 to 5 per cent., and in such security as was provided therefor, a benefit commensurate with what they parted with in the way of future possibilities.

The contention that the transaction was unnecessary, that the Traction Company might have obtained money in other ways, and without parting with its prospects of increased receipts, becomes immaterial, since there is no charge of fraud, and no evidence sufficient to show an abuse of discretion, or an attempt by a majority of the shareholders to profit at the expense of a minority.

So far as the matter was one of business judgment and discretion, falling within the scope of the corporate business of the Traction Company, we cannot here review it. The provisions for rentals, for caring for the various obligations, and for the payment of dividends of 5 per cent. upon the shares of the Traction Company seem to be matters of this kind. It cannot be said that the matter of prospective increase did not enter at all into this part of the bargain, or that it was wholly ignored in providing for 5 per cent. on the $8,000,000 of stock.

[4] The prayer of the bill is in the alternative, that the defendants may be decreed to pay the complainant the full value of his 400 shares of stock as shown by an accounting, or in lieu thereof to issue to him the same proportional part of all the stock of the Securities Company that he holds in the Traction Company.

The complainant, however, continued to receive dividends upon his shares at the rate of 5 per cent., as provided for in the lease transaction, and delayed filing his bill for 3 years and 11 months after the transactions of which he here complains.

There appears to be no substantial reason why, so far as the stock is concerned, he should not be left in the same position that he voluntarily assumed throughout this time. There is no need of compensating him for what he has not been deprived of, even on his own showing; nor is it necessary, in order to compensate him for his sup-

posed loss, that the defendants should be required to take over his stock.

If the complainant considered himself entitled to terminate all relations with the Traction Company, and to demand his distributive share of assets in return for a surrender of his stock, he should have proceeded with diligence to do so. His delay for so long a time, and his acceptance of benefits in the form of increased dividends, amount to an election to retain his shares.

The alternative prayer of the bill is that the respondents should issue to him the same proportion of shares in the Securities Company as he held in the Traction Company.

The complainant, instead of asserting that he is unwilling to become a shareholder in the Rhode Island Securities Company, complains that the number of shares allotted to him, and which he has not applied for, is inadequate.

The theory that prospective profits properly belonging to the Traction Company were taken over by the Securities Company, and can be followed into the hands of the Securities Company, and disintegrated from its assets derived from other sources, and returned to him in the form of additional shares of stock in the Securities Company, is wholly impractical.

The offer to shareholders of the Traction Company of shares in the Securities Company was apparently by way of bonus, and was a collateral transaction. It did not enter into the leasing contracts made between the operating railway companies and the lessee, the Rhode Island Company, nor form a part of the consideration between lessor and lessee. The shares of the Securities Company were not to become assets of the Traction Company.

The complainant argues that the rentals were clearly not full compensation for the leases, since the consideration actually given included also a part of the Securities Company stock. But while the offer of those controlling the Securities Company to give to shareholders of the Traction Company a part of the large issue of its common stock may indicate a hope of increased income from the railway properties, with added capital, it affords no sound reason for a belief that the Traction Company did not in fact get full consideration for the exercise of its voting powers in favor of the leases.

The proofs are entirely insufficient to show as a fact that the complainant has been wrongfully deprived of dividends, or of any real, as distinguished from speculative, values.

The only indication that there was any value in the assets of the Traction Company over and above the return it secured under the leasing arrangement is the fact that it was contemplated, after putting additional money into the properties, to issue an amount of shares of the Securities Company greatly in excess of any new capital contributed to the Securities Company; but, while the lease part of the transaction may be regarded as principally a business proposition, and there is considerable evidence in the record that it was on that basis approved by men of good character and sound financial judgment, on the other end of the transaction it is evident that the amounts of the

stock issues and of the bond issues were of an arbitrary and speculative character.

It would not be sensible, however, to say that the proposal to add a fourth story to this three-storied financial structure, and to issue a large block of stock, is evidence which could be accepted by a court of equity to support complainant's contention that he has been unjustly deprived of property of proven existence and of substantial value. The common stock in the Securities Company was not offered as based upon definite values, or as required to make up a difference between the actual values of the Traction Company's assets and what it was to receive through the leases. It represented at the time a share in a speculative possibility.

It is impossible for this court to say whether such share was or was not too small. It is impossible for this court to apportion between the promoters of the Securities Company and the shareholders of the Traction Company the common stock of the Securities Company.

I am unable to see that the complainant has made out any case against the Traction Company. However just may be his criticisms of the mode of financing disclosed by this record, and of this mingling of business and speculation, he has, in my opinion, failed to show that the Traction Company exceeded its powers, abused his rights as a minority stockholder, or even that it made a bad bargain, having due regard to the interests of the shareholders.

That there was a speculative field of finance in which it might have got more does not prove that it did not get enough, even if others in that speculative field did get more.

Though the complainant has asked for more stock, he has consistently declined to accept the 100 shares of stock of the Securities Company to which, under the allotment, he was entitled. Ordinarily, when shares are thus offered, provision is made for paying their value to one who refuses to accept them in kind.

No proof has been presented which enables me to say what sum, if any, complainant should be entitled to in lieu of the 100 shares of Securities Company stock, though the suggestion is made that an allotment of shares has become impractical or impossible by reason of change of circumstances.

At this time no more can be said, therefore, than that the complainant seems to be entitled to such sum as will represent the value of 100 shares of stock of the Rhode Island Securities Company. In case such valuation cannot be agreed upon by the parties, the amount thereof may be determined by further proceedings.

A decree should provide for the payment on behalf of the Securities Company of such sum as may be found just, and for a dismissal of the bill as to the defendant United Traction Company.

Questions of costs reserved.