**CERTAINTEED CORPORATION and Bay Mills, Ltd.**

v.

**FEDERAL INSURANCE CO.**

Civil Action No. 94–7526.

United States District Court, E.D. Pennsylvania.

Nov. 17, 1995.

Charles B. Blakinger, Jill A. Douthett, Debra G. Staples, Kevin J. Kotch, Hoyle, Morris and Kerr, Philadelphia, PA, for plaintiffs.

Michael J. Plevyak, Mary Ellen Fitzgerald Pina, White and Williams, Paoli, PA, for Defendant.

## MEMORANDUM

RENDELL, District Judge.

Plaintiff CertainTeed Corporation ("CertainTeed") moves for partial summary judgment seeking a declaration that defendant Federal Insurance Co. ("Federal") had a duty to defend it in the case of *Carlson v. Bay Mills, Ltd. et al,* no. C2–92–001350 (Tenth Judicial District, County of Wright, State of Minnesota) (*"Carlson "*). In the underlying complaint, plaintiff Bay Mills, Ltd. ("Bay Mills") made a separate claim against Federal, seeking coverage under its policy for CertainTeed's indemnification claim against Bay Mills. In addition, both CertainTeed and Bay Mills asserted claims of bad faith against Federal arising out of its activities as insurer in the *Carlson* matter. Federal moves for summary judgment with regard to CertainTeed's claim of Federal's duty to defend, Bay Mills' demand for coverage of the indemnification claim, and the claims regarding Federal's bad faith. For the reasons stated below, CertainTeed's Motion for Partial Summary Judgment is denied. Federal's Motion for Summary Judgment with regard to its duty to defend and indemnify CertainTeed is granted; its motion for summary judgment with regard to plaintiffs' allegations of bad faith is denied.

## I.  Factual Background

### A.  The Parties

CertainTeed and Bay Mills seek insurance coverage under a policy issued to Bay Mills by Federal for claims made against CertainTeed in the *Carlson* litigation, a products liability action. At all relevant times, Bay Mills was owned by CertainTeed through two intermediary holding companies. Certain-

Teed Ltd., a non-operating Canadian holding company, held the stock of Bay Mills. All of the stock of CertainTeed Ltd. was owned by CRT, Inc., a non-operating Delaware holding company, and all of the stock of CRT, Inc. was owned by CertainTeed.[1]

On July 6, 1992, Matthew Carlson commenced a lawsuit in the Tenth Judicial District, County of Wright, State of Minnesota. Carlson brought this suit for injuries he received while a passenger in a car that collided with a runaway horse on August 31, 1991. The horse had escaped from a pasture which was enclosed by Bayguard electric fence tape. Bay Mills manufactured and sold the Bayguard tape.

In the original complaint, Carlson sued only Bay Mills; CertainTeed was not named as a defendant. Pursuant to insurance policies issued by Federal to Bay Mills, Federal undertook the defense of Bay Mills in the *Carlson* action. On December 21, 1992, the court granted leave to Carlson to amend the complaint to add CertainTeed as a defendant. On January 28, 1994, Carlson filed a second amended complaint in which he identified CertainTeed as the "ultimate parent of Bay Mills" and alleged that Bay Mills and CertainTeed were liable due to negligence, breach of warranty, strict liability and fraud committed by each of them. A separate count claimed that Bay Mills and CertainTeed exercised joint control over the manufacture of the tape and that their conduct constituted a joint venture. CertainTeed undertook its own representation and defense of the claim, making no demand on Federal to defend it.

However, Bay Mills and CertainTeed contend that on April 18, 1994, they requested Federal to settle the *Carlson* litigation on behalf of both Bay Mills and CertainTeed under the Bay Mills policies.[2] On or about June 2, 1994, Carlson's claim against Bay Mills was settled pursuant to a *Pierringer*

---

1.  CRT, Inc. was merged into CertainTeed on December 31, 1992, but this does not affect the instant issues or analysis.

2.  Federal contests this assertion. They claim that the April 18 correspondence relied upon contained a request that Federal resolve the claim only on behalf of Bay Mills. This disagree-

Release.[3] On June 16, 1994, CertainTeed demanded indemnification from Bay Mills for the costs of defense as well as any settlement or verdict. On or about the same day, Bay Mills tendered CertainTeed's claim against it to Federal, demanding that Federal agree to defend and indemnify Bay Mills with respect to CertainTeed's claim for indemnity and contribution. On June 20, 1994, Federal declined Bay Mills' request that Federal defend and indemnify CertainTeed with respect to any settlement CertainTeed might negotiate with Matthew Carlson or any adverse verdict that might be rendered by a jury. Certain-Teed did not assert a claim for contribution or indemnification against Bay Mills during the *Carlson* litigation.

Federal based its denial upon the fact that CertainTeed was not a named insured or additional insured under the policies issued to Bay Mills. Federal also contended that the release nullified any claims of other defendants against Bay Mills for contribution or indemnity. Federal claims, therefore, that it was justified in declining Bay Mills' request that Federal defend and indemnify CertainTeed with respect to the settlement CertainTeed negotiated with Matthew Carlson or any adverse jury verdict because, pursuant to the release, Bay Mills was immunized from any indirect liability in the *Carlson* matter on account of claims for contribution or indemnity. Federal also contends that, because CertainTeed was neither listed as an insured under the policies, nor entitled to indemnification in light of the *Pierringer* Release, CertainTeed's claim of bad faith must be dismissed as a matter of law.

### B. *The Policies*

Federal issued a Commercial General Liability Policy ("CGL") to Bay Mills effective February 1, 1991 to February 1, 1992. Federal also issued a Commercial Excess Umbrella Policy ("CEU") to Bay Mills, effective for the same dates. The relevant language of the "WHO IS INSURED" section of the primary policy provides:

1. If you are:

   . . . .

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. An organization other than a partnership or joint venture, you are insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds but only with respect to their liability as stockholders.

   **LIMITATION ON WHO IS INSURED** No one is an insured for the conduct of any current or past partnership or joint venture that is not shown as a named insured in the Declarations.

The relevant language of the CEU incorporates the coverage for stockholders provided by the CGL, and also provides that the following persons are insureds under the excess policy: "any officer, director, stockholder or employee of yours while acting within the scope of their duties as such." Neither of the Federal policies defines the term "stockholder."

## II. *Choice of Law*

The *Carlson* litigation took place in Minnesota and the *Pierringer* Release was negotiated and entered into in Minnesota.

CertainTeed has its principal place of business in Pennsylvania and the insurance policies were negotiated, issued, and delivered in Pennsylvania.[4] Thus, I am faced with a possible conflict of laws issue. "Before a choice of law question arises, however, there must actually be a conflict between the potentially applicable bodies of law." *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813–14 (3d Cir. 1994); *see also Lambert v. Kysar*, 983 F.2d

---

ment does not affect the instant issues or analysis.

3. *See* Part IV.B.1. herein for a discussion of this type of release.

4. Bay Mills is a Canadian corporation. None of the parties argues that Canadian law applies. In light of the parties' agreement and this lone connection, I will not apply Canadian law.

1110, 1114–15 (1s Cir.1993) (deciding that "[w]e need not resolve the [conflict of law] issue ... as the outcome is the same under the substantive law of either jurisdiction."). With regard to the interpretation of the policies and the settlement agreement, the parties have not identified any differences between Pennsylvania and Minnesota law, nor has my research revealed any conflict. Thus, the outcome of the motions with regard to those issues would be the same under either Pennsylvania or Minnesota law, and there is no conflict.[5] For the sake of clarity, I will refer primarily to Pennsylvania law. *Cf. Lucker*, 23 F.3d at 813 (holding that where application of Pennsylvania and Wisconsin law would lead to the same result court could refer interchangeably to law of both states). I refer also to the law of other states with regard to general matters of corporate law.

### III. *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. at 2510. All inferences must be drawn, and all doubts resolved, in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

### IV. *Discussion*

#### A. *CertainTeed's Motion for Summary Judgment: Is CertainTeed Covered Under the Bay Mills Policy?*

Bay Mills is the only named insured under the policy. CertainTeed is not named as an insured in the Declarations or otherwise referred to in the policy. CertainTeed seeks coverage under the provisions of the policies on two theories: First, CertainTeed contends that as "ultimate parent" with two non-operating companies standing between it and Bay Mills, it is a "stockholder" of Bay Mills, entitled to coverage. Second, CertainTeed argues that the *Carlson* complaint avers that CertainTeed and Bay Mills acted as joint venturers and, accordingly, both defendants are covered under the policy as participants in a "joint venture." By not defending CertainTeed in the *Carlson* litigation, plaintiff argues, Federal breached its duty to defend.

#### 1. *Is CertainTeed a Stockholder?*

CertainTeed cites two cases—decided by the same district court in the District of Columbia—that specifically considered—and allowed—coverage under the stockholder provision when intermediate holding companies were involved. *See Independent Petrochemical Corp. v. Aetna Casualty & Sur. Co.*, 1988 WL 242659 (D.D.C. Sept. 7, 1988) (applying Missouri law), *rev'd on other grounds*, 944 F.2d 940 (D.C.Cir.1991), *cert. denied*, 503 U.S. 1011, 112 S.Ct. 1777, 118 L.Ed.2d 435 (1992); *Turner & Newall, PLC v. American Mut. Liab. Ins. Co.*, 1985 WL 8056 (D.D.C. Aug. 1, 1985) (applying Pennsylvania law). The court in both cases held that a parent company is insured as a stockholder under an ultimate subsidiary's insurance policy notwithstanding the existence of intermediate holding companies. The *Turner & Newall* court held that the stockholder provision cov-

**5.** Federal does not challenge the assertion that Pennsylvania law applies to plaintiffs' claims of bad faith insurance coverage. In light of the parties' agreement and the fact that CertainTeed, as the principal party claiming bad faith activity, is a Pennsylvania corporation, I apply Pennsylvania law. *See Celebre v. Windsor–Mount Joy Mut. Ins. Co.*, 1994 WL 13840 at *2 (E.D.Pa., Jan. 14, 1994) (holding that the likely policy behind enacting 42 Pa.C.S.A. § 8371 is that the Pennsylvania legislature was concerned about protecting its own residents/insureds and thus Pennsylvania law applies where insured is Pennsylvania resident); *Thomson v. Prudential Property & Cas. Ins. Co.*, 1992 WL 38132 at *2 (E.D.Pa., Feb. 20, 1992) (same); *see also General Star Nat'l. Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 379 (3d Cir.1992) (holding that Pennsylvania's interest in applying its own law diminished where insured was not a Pennsylvania resident).

ers the parent corporation's liability pursuant to the policy in situations in which the parent's liability is based on its relationship as the parent corporation. *See* 1985 WL 8056 at *5–10.

Federal argues that during the pertinent policy period, CertainTeed Ltd., not CertainTeed, owned the entirety of Bay Mills' stock, and that CertainTeed Ltd., as Bay Mills' sole stockholder, is the only entity which could rightfully assert a claim seeking coverage pursuant to the stockholder provision in Bay Mills' policies. Accordingly, as CertainTeed was not a named or additional insured under the policies in question, nor was it one of Bay Mills' stockholders, Federal had no duty to defend CertainTeed.[6] With regard to *Independent Petrochemical* and *Turner & Newall,* Federal asserts that *Turner & Newall,* although purportedly applying Pennsylvania substantive law, is contrary to the well-established law of Pennsylvania regarding the interpretation of insurance policies, and that these cases should be limited to their specific facts, since they reflect the inventiveness of the court in finding a deep pocket for mass tort liability.[7]

█ In order to determine the meaning of "stockholder," I must employ recognized rules of construction of insurance policies as established by Pennsylvania law. I am to ascertain the reasonable expectations of the parties as manifested by the language of the policies. *See Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563, 566 (1983); *Collister v. Nationwide Life Ins. Co.,* 479 Pa. 579, 388 A.2d 1346 (1978), *cert. denied,* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979). If the language is ambiguous, I should construe it in favor of the insured, *see Bateman v. Motorists Mutu-*

al *Ins. Co.,* 527 Pa. 241, 590 A.2d 281, 283 (1991), although this is not necessarily the case where sophisticated corporations with equal bargaining power are involved, *see Eastern Associated Coal Corp. v. Aetna Casualty & Sur. Co.,* 632 F.2d 1068, 1075 (3d Cir.1980), *cert. denied,* 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 843 (1981). The threshold question, therefore, is whether the term "stockholder" is ambiguous such that I cannot determine the parties' intent. *See Standard Venetian Blind,* 469 A.2d at 566. I decide this question as a matter of law. *See Vlastos v. Sumitomo Marine & Fire Ins. Co.,* 707 F.2d 775, 778 (3d Cir.1983).

█ A term is said to be ambiguous if reasonably intelligent individuals would honestly differ as to its meaning and if alternative or more precise language, if used, would have put the meaning of the language beyond reasonable question. *See Vlastos,* 707 F.2d at 778; *Turner & Newall,* 1985 WL 8056 at *5. I am unwilling to engage in the exercise that the court employed in *Turner & Newall* to find that the ultimate parent of a defunct company was its "stockholder" under its insurance policy. The court in *Turner & Newall* reasoned that the fact that the policy could have used, but did not use, the term "stockholder of record" suggested that the term "stockholder" was ambiguous. The court concluded that "reasonably intelligent individuals on considering it in the context of the entire policy would honestly differ as to its meaning." 1985 WL 8056 at *8 (quotations omitted). As a result, the court construed this 'ambiguous' language against the drafter.[8]

The policy language, set forth above, is worth repeating:

1. If you are:

---

6. Although Federal questions the propriety of CertainTeed as a third party raising the question of the extent of Bay Mills' coverage, such claims are allowed under Pennsylvania law. *See Imperial Casualty v. High Concrete Structures, Inc.,* 858 F.2d 128, 131 n. 4 (3d Cir.1988) (noting that "Pennsylvania law says not only that insurance policies must be construed on favor of the insured, but also that policies must be construed in a manner which is more favorable to coverage." (quotations omitted)).

7. *Turner & Newall* was an asbestos case; *Independent Petrochemical* involved environmental cleanup costs.

8. Judge Flannery's opinion in *Turner & Newall* focused on the parent's control and ownership of the subsidiary. In so doing, Judge Flannery covered thoroughly a question that I decline to reach. In my view, the intent of the parties is clear in light of the generally accepted definition of the word "stockholder." Thus, I will not address the niceties of the unintended scope of "stockholder" in the parent-subsidiary context.

....

c. An organization other than a partnership or joint venture, you are insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your *stockholders* are also insureds but only with respect to their liability as *stockholders*.

(emphasis added). I have little difficulty in finding that the word "stockholder" is clear— it means owner of stock. While it is true, as the *Turner & Newall* court pointed out, that "stockholder of record" would have put the meaning of the language beyond reasonable question, that analysis is only the second half of a two-part test. Before arriving at that step, I must first resolve whether reasonably intelligent individuals "on considering it in the context of the entire policy would honestly differ as to its meaning." *Northbrook Ins. Co. v. Kuljian Corp.,* 690 F.2d 368, 372 (3d Cir.1982) (citations omitted). The parties here entered into a standard insurance contract. There is nothing in the context of this policy—nor any evidence presented as to the negotiations between the parties—that indicates that in using the word "stockholder" the parties intended anything other than the generally recognized definition of that word. Shareholders of record are generally considered the "stockholders." *See Bache & Co. v. General Instrument Corp.,* 74 N.J.Super. 92, 180 A.2d 535, 538 (1962) (noting that in general the legal owner, rather than the beneficial owner, is considered the "stockholder" or "shareholder"), *cert. denied,* 38 N.J. 181, 183 A.2d 87 (1962); *Salt Dome Oil Corp. v. Schenck,* 28 Del.Ch. 433, 41 A.2d 583, 585 (1945) (holding that the term "stockholder" is ordinarily taken to apply to the holder of the legal title to the shares of stock); *In the Matter of Enstar Corp. v. Senouf,* 535 A.2d 1351, 1354 (Del.1987) (same). Shareholders in holding companies are not shareholders, nor entitled to the rights of shareholders, in other corporations a part of whose stock is owned by the holding company. *See Fletcher Cyclopedia Corporations* § 5767 (1993); *Sabre v. United Traction & Electric Co.,* 225 F. 601, 603 (D.R.I.1915).[9] Thus, I find that reasonably intelligent individuals would conclude that in the context of this policy the term "stockholders" means record shareholders.

The policy language defining when a stockholder is covered by the policy bolsters my view that CertainTeed is not entitled to coverage under the policy terms. Stockholders are insured "only with respect to their liability as stockholders." As indicated by the court in *Turner & Newall,* this limits coverage to those situation in which the additional insured's liability has arisen due to its relationship with the insured. *See* 1985 WL 8056 at *6. In the instant case, while CertainTeed is referred to as the "ultimate parent," the claims made against CertainTeed are not as alter ego, or simply as stockholder, but, rather, as an independent actor charged with the same conduct on its own, as well as together with Bay Mills. The policy language reflects coverage for a stockholder when its status as stockholder—not its own conduct—makes it liable for conduct of the named insured. *See Turner & Newall,* 1985 WL 8056 at *6.

Finally, in creating the holding companies, CertainTeed distanced itself from ownership of the stock of Bay Mills. To describe CertainTeed now as a stockholder, I would not only have to ignore the intent of the parties, but also the distinctiveness of these corporate entities, a conclusion contrary to basic tenets of corporate law. CRT was, at all times relevant hereto, the stockholder of Bay Mills. Thus, I find that CertainTeed cannot be described as a "stockholder" pursuant to the policy. Accordingly, Federal had no duty to defend CertainTeed as a stockholder of Bay Mills in the *Carlson* action and did not breach this alleged duty to CertainTeed.

**9.** "Stockholder" or "shareholder" is defined in the Revised Model Business Corporation Act as " 'the person in whose name shares are registered in the records of a corporation or the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation' ") (quoting Rev. Model Bus. Corp.Act § 1.40)). In contrast to record ownership of stock, "beneficial ownership" has a more narrow application. Here, my task is to give effect to the intent of the parties, not to visit the various analyses courts have undertaken in other contexts in attributing ownership to parties who were not shareholders of record.

### 2. *Is CertainTeed Covered As a Joint Venturer?*

■ CertainTeed concedes that neither it nor Bay Mills ever considered their combined activities to be a joint venture. CertainTeed argues, however, that because grants of coverage are to be construed broadly, when Carlson alleged joint venture liability on the part of Bay Mills and Certain-Teed, the policy should have been interpreted to cover CertainTeed. CertainTeed concludes that because it was a member of this alleged joint venture, it is an insured under the terms of the Federal policies. Federal responds that "CertainTeed" is not listed as an insured on either the CGL or the CEU. Federal concludes that there is no coverage for CertainTeed as an alleged joint venturer under the Policies issued to Bay Mills.

As with the interpretation of the stockholder provision, my task is to "ascertain the intent of the parties as manifested by the language of the written instrument." *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983). Where the language of the contract is clear and unambiguous, I am required to give effect to that language. *Id.* This circuit has cautioned that "a court should be careful not to create an ambiguity and, likewise, it should avoid rewriting the policy language in such a way that it conflicts with the plain meaning of the language." *Lucker Manufacturing v. Home Ins. Co.*, 23 F.3d 808, 814 (3d Cir.1994).

The CGL's "WHO IS INSURED" provision states in relevant part that "[i]f you are ... [a] joint venture, you are an insured." The policy also contains a "LIMITATION ON WHO IS INSURED": "No one is an insured for the conduct of any current ... joint venture that is not shown as a named insured in the Declarations." The Declarations of the CGL list as the named insured "Bay Mills Ltd., Etal." An amendment to the CGL Policy lists Bayex, Inc. and Perma Glas–Mesh Corp. as additional named insureds. The CEU Policy states in relevant part that "[t]his policy will only apply to ... joint ventures designated within the Declarations of this policy as a named insured...." The Declarations of the CEU name Bay Mills Ltd., Bayex, Inc. and Perma Glas–Mesh Corp. as insureds. A later endorsement adds Air Vent, Inc. and Browning Metal Products, Inc. as additional named insureds.

The terms of the Policies clearly establish that only joint ventures shown or designated as named insureds in the Declarations will be considered insured for purposes of coverage as joint ventures under the Policies. There is no joint venture in the Declarations of either Policy as a named insured. In order for me to find that CertainTeed was covered pursuant to either of the Policies, I would have to interpret the Policies as covering Bay Mills as an insured joint *venturer*, and further that any joint *venturers* with Bay Mills would be insured. Such an interpretation would conflict with the plain meaning of the Policies. Accordingly, there is no coverage for CertainTeed as an alleged joint venturer under the Policies issued by Federal to Bay Mills.

### B. *Federal's Motion for Summary Judgment*

### 1. *Does the Pierringer Release Nullify Any Claim of CertainTeed Against Bay Mills for Indemnity or Contribution?*

■ Bay Mills (using its insurance) paid plaintiff $2 million to settle the *Carlson* litigation and received a *Pierringer* Release in return. The *Pierringer* Release is well known under Minnesota law:

> The basic elements of a Pierringer release are: (1) The release of the settling defendants from the action and the discharge of a part of the cause of action equal to that part attributable to the settling defendants' causal negligence; (2) the reservation of the remainder of plaintiff's causes of action against the nonsettling defendants; and (3) plaintiff's agreement to indemnify the settling defendants from any claims of contribution made by the nonsettling parties and to satisfy any judgment obtained from the nonsettling defendants to the extent the settling defendants have been released.

*Frey v. Snelgrove*, 269 N.W.2d 918, 921 n. 1 (Minn.1978). The release is named for *Pier-*

ringer v. Hoger, 21 Wis.2d 182, 124 N.W.2d 106 (1963), in which the Wisconsin Supreme Court approved the release of a joint tortfeasor which reserved the plaintiff's right to maintain the cause of action against the remaining defendants and also held that the nonsettling defendants' right to contribution could effectively be cut off by a plaintiff who agrees to indemnify the settling defendants against any claim of contribution. By the terms of this type of release the nonsettling defendant will never be required to pay more than its fair share as determined by the jury's finding of comparative negligence, and therefore no contribution claim will lie. In the instant fact setting the Release provides that the $2 million payment by Bay Mills satisfies Bay Mills' appropriate share of liability; because Bay Mills has paid its fair share, others will be paying only their fair share and will therefore not be entitled to contribution from Bay Mills.

CertainTeed argues that the terms of the release entered into by the plaintiff in the Carlson action suggest that the plaintiff may not have intended a Pierringer release, and that the issue of the parties' intent is an unexplored factual question making this aspect of the matter unsuited for summary judgment. Federal argues that pursuant to the terms of the release any indemnity claim of CertainTeed against Bay Mills arising out of the Carlson action was extinguished as a matter of law; accordingly, Bay Mills—and

thus Federal—cannot have any liability for such a claim.

The threshold issue is whether the intent of the parties can be fairly divined from the release or whether, as CertainTeed argues, we need to probe the intent of the parties, and deny summary judgment at this time. If the language of the release clearly indicates that the parties agreed that Bay Mills would be released from any indemnification claims from non-settling parties, then CertainTeed's claim for indemnification should be dismissed as a matter of law. See Vlastos v. Sumitomo Marine & Fire Ins. Co., 707 F.2d 775, 778 (3d Cir.1983) (holding that interpretation of unambiguous contractual language is a question of law); Alumax Mill Products v. Congress Financial Corp., 912 F.2d 996, 1010 (8th Cir.1985) (holding that Pierringer principles apply to claims for indemnification as well as for contribution). If, on the other hand, the language is subject to differing interpretations, I should consider evidence of intention as urged by CertainTeed.

Notwithstanding CertainTeed's attempts to create an issue of intent, I find that it is clear from the face of the Release that Bay Mills intended to accept a release whereby Bay Mills was released of any claims by any other defendants.[10] The Carlson release, titled "Pierringer Release," clearly spells out the three elements of a Pierringer Release. First, Bay Mills was expressly released from the cause of action and its share of liability was discharged.[11] Second, Carlson reserved

10. In the absence of affidavits or other submissions to the contrary, the parties have raised no issue that their intent cannot be determined simply from examining what the document says. In an attempt to create an issue of intent, CertainTeed claims the release of Bay Mills does not provide that plaintiff reserves the balance of his claims in the cause of action, but rather, in the portion of the release reserving plaintiff's claims, specifically names CertainTeed. CertainTeed contrasts this language with the language of what it contends is a "true" Pierringer Release, wherein the plaintiff "expressly reserv[ed] the balance of the whole cause of action or any other claim whatever kind of nature not released hereby which I may have or hereafter have against any other party or person arising out of the above accident." The fact that one release specifically mentions the remaining defendant by name whereas the other release refers to the claim against the non-settling defendant as "the balance of the whole cause of action" does not

change the legal effect of the language. Thus, CertainTeed raises no genuine issue as to the parties' intent.

11. "Matthew Carlson ... does hereby covenant and expressly agree with Bay Mills, Ltd., not to further prosecute this suit for damages by Matthew Carlson against Bay Mills, Ltd. ... and agrees to execute a Stipulation of Dismissal with Prejudice in said action insofar as Bay Mills, Ltd. is concerned.

. . . .

By this agreement Bay Mills, Ltd. is hereby discharged from its liability, if any, for contribution or indemnity with respect to the claim for damages of Matthew Carlson, and the claims of Matthew Carlson are satisfied to the extent of that percentage of his total claim for damages against Bay Mills, Ltd. arising out of the accident of August 31, 1991, which shall hereafter, by further trial or other disposition of this or any

the remainder of his claims against the remaining defendants.[12] Third, Carlson agreed to indemnify Bay Mills for any claims by non-settling defendants.[13] Finally, the release was titled "Pierringer Release." *See Alumax*, 912 F.2d at 1009 (holding that title of release is relevant in determining if parties intended it to be a *Pierringer* Release). The intent of the parties to enter into a *Pierringer* Release is clear from the face of the document. The issue of the foreclosure of claims of codefendants was not just one aspect of the *Pierringer* case, it was the key aspect of its holding. *See Pierringer*, 124 N.W.2d 106. Pursuant to the Release, Bay Mills was effectively discharged from liability for indemnity with respect to Carlson's claims against others. Thus, CertainTeed is not entitled to indemnification from Bay Mills. Accordingly, Federal has no duty to indemnify Bay Mills with respect to Certain-Teed's claims.

### 2. Is Federal Entitled to Summary Judgment on the Bad Faith Claims

CertainTeed and Bay Mills allege that Federal acted in bad faith pursuant to 42 Pa.C.S.A. § 8371 as a matter of law. Federal moves for summary judgment on these claims, arguing that because CertainTeed is not entitled to coverage under the Policies, Federal cannot have acted in bad faith. Federal claims, further, that it cannot have acted in bad faith in connection with CertainTeed's alleged claim for indemnification, as the Release immunizes Bay Mills from such a claim.

CertainTeed and Bay Mills contend, however, that even if I were to grant Federal's motion for summary judgment on Certain-Teed's indemnification claim against Bay Mills, their bad faith claims—which they allege are broader than the question of coverage or the release—should nevertheless survive.

■■■■ "Bad faith" is not defined in § 8371.[14] However, "[i]n the insurance context, the term 'bad faith' has acquired a universally acknowledged meaning:

> Insurance. "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Romano v. Nationwide Mut. Fire Ins. Co.*, 435 Pa.Super. 545, 646 A.2d 1228, 1231 (1994) (quoting *Black's Law Dictionary* 139 (6th ed. 1990)). While "[t]he majority of courts to have considered the issue have held that bad faith conduct in the context of section 8371 refers to a bad faith denial of coverage," *Grove v. Aetna Casualty & Sur. Co.*, 855 F.Supp. 113, 115 (W.D.Pa.1993) (quotations omitted), alleged conduct constituting violations of the Unfair Insurance Practices Act ("UIPA"), 40 Pa.S. § 1171.1 *et seq.*, can also

---

**12.** "It is specifically understood that this is not an agreement to dismiss all claims against all individuals.... It is only an agreement to dismiss the claims against Bay Mills, Ltd.

....

This Pierringer Release is not entered into, nor in any way intended, to release any claim or cause of action by Matthew Carlson against CertainTeed Corporation ... said claims and causes of action being specifically preserved and retained against CertainTeed Corporation; said Pierringer Release only releases and is only intended to release, all claims against Bay Mills, Ltd....."

cause of action, be determined to be the percentage of causal fault or causal responsibility, if any, whether for negligence or any other liability, for which it is found liable."

**13.** "Matthew Carlson specifically agrees to hold Bay Mills, Ltd. harmless, and specifically agrees to indemnify Bay Mills, Ltd. for any claims, demand or cause of action by CertainTeed Corporation, or apportionment by way of contribution or indemnity, whether such claim for contribution is alleged to arise by reason of judgment, settlement, or otherwise."

**14.** 42 Pa.C.S.A. § 8371 states, in relevant part:
In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
(1) Award interest on the amount of the claim....
(2) Award punitive damages against the insurer.
(3) Assess court costs and attorney fees against the insurer.

be considered in determining whether an insurer acted in bad faith, *see MacFarland v. United States Fidelity & Guar. Co.*, 818 F.Supp. 108, 110 (E.D.Pa.1993); *Rottmund v. Continental Assurance Co.*, 813 F.Supp. 1104, 1109 (E.D.Pa.1992); *Coyne v. Allstate Insurance Co.*, 771 F.Supp. 673, 678 (E.D.Pa. 1991).[15]

Federal appears to have a good faith defense that it deemed the *Pierringer* release as dispositive of its duty to indemnify CertainTeed on behalf of Bay Mills, and that, because CertainTeed was not either a stockholder or joint venturer with Bay Mills, Federal had no duty to defend. Were these CertainTeed's exclusive claims of bad faith, it might be appropriate for me to grant summary judgment. *See, e.g., Lucker Mfg. v. Home Ins. Co.*, 818 F.Supp. 821, 829 (E.D.Pa. 1993), *aff'd*, 23 F.3d 808 (3d Cir.1994).

However, CertainTeed and Bay Mills make claims of bad faith based not only on Federal's duty to defend, but also on other conduct of Federal which may violate provisions of the UIPA. *See* Complaint, Count IV (f)–(l). For example, they claim that Federal misrepresented "pertinent facts, policy or contract provisions relating to coverages and issue." Complaint, Count IV (f). Federal has not addressed, let alone controverted, these allegations in its motion. CertainTeed and Bay Mills thus rely on their pleadings. Accordingly, while it may be unlikely that CertainTeed would have a bad faith claim in light of my findings, I cannot say at this time that these claims of bad faith can be disposed of on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 2511 n. 5, 91 L.Ed.2d 202

(1986) (noting that pursuant to Rule 56(f) summary judgment should be refused where nonmoving party has not had the opportunity to discover information that is essential to his opposition); *see also Mendel v. Home Ins. Co.*, 806 F.Supp. 1206, 1217 (E.D.Pa.1992) (holding that claim of bad faith is not susceptible to summary judgment disposition where genuine issues of material fact exist).[16] Accordingly, Federal's motion for summary judgment with regard to the claims of bad faith is denied.

An appropriate order follows.

### ORDER

AND NOW, this 17th day of November, 1995, upon consideration of the Motion for Partial Summary Judgment of Plaintiff CertainTeed, and the Motion for Summary Judgment of Defendant Federal Insurance Co., it is hereby ordered and declared that CertainTeed's Motion is DENIED. Federal's Motion for Summary Judgment on Counts I–III with regard to its duty to defend and indemnify CertainTeed is GRANTED; its Motion on Count IV with regard to plaintiffs' allegations of bad faith is DENIED.

**15.** Among the "unfair or deceptive acts or practices" that the UIPA proscribes are:

(i) Misrepresenting pertinent facts or policy or contract provisions relating to coverages at issue.

(ii) Failing to acknowledge and act promptly upon written or oral communications with respect to claims arising under insurance policies.

. . . .

(iv) Refusing to pay claims without conducting a reasonable investigation based upon all available information.

. . . .

(vi) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy has become reasonably clear.
40 Pa.C.S.A. § 1171.5(a)(10) (1982).

**16.** While the language of § 8371 leaves it to "the court" to decide issues of bad faith, § 8371 has been interpreted to require questions of bad faith to be presented to a jury, if the plaintiff so requests. *See MacFarland*, 818 F.Supp. at 112; *Thomson v. Prudential Property and Casualty Ins. Co.*, 1992 WL 210088 (E.D.Pa., August 24, 1992). As there has been a demand for a jury here, if, after discovery, genuine issues of material fact remain, the issue must go to a jury.